# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **MICHAEL W. RONDINI, as Administrator and Personal Representative for the Estate of Megan Elizabeth Rondini, deceased,** | }<br>}<br>}<br>}<br>} |
| **Plaintiff,** | } Case No.: 7:17-cv-01114-RDP<br>}<br>} |
| **v.** | }<br>} |
| **TERRY J. BUNN, JR.,** | }<br>} |
| **Defendant.** | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Quash and Motion for Protective Order (Doc. # 112)[1] and Supplemental Motion to Quash and Protective Order. (Doc. # 117). The Motions have been fully briefed (Docs. # 114, 118-120) and are ripe for decision. After careful review, and for the reasons explained below, the court concludes that Defendant's Motions (Docs. # 112, 117) are due to be granted in part and denied in part.

**I.      Background**

Plaintiff Michael Rondini brings this wrongful death action as the Personal Representative of the Estate of Megan Rondini, his deceased daughter. Plaintiff alleges that Defendant

---

[1] Defendant filed his original Motion to Quash Non-Party Subpoenas and Motion for Protective Order on March 27, 2019. (Doc. # 110). After the court reminded the parties to brief the Motion in accordance with Exhibit B of the court's Initial Order (Doc. # 111), Defendant filed a second Motion to Quash and Brief In Support to comply with the court's briefing instructions. (Doc. # 112). Accordingly, the court considers Defendant's second Motion to Quash and Motion for Protective Order (Doc. # 112) as the operative motion. Defendant's original Motion filed on March 27, 2019 (Doc. # 110) is due to be denied as moot.

1

intentionally imprisoned and sexually assaulted the decedent on the evening of July 1, 2015, which led to the decedent's eventual suicide on February 26, 2016. (*See generally* Doc. # 100).

During discovery, Plaintiff issued Notices of Intent to serve non-party subpoenas on (1) the Tuscaloosa Police Department, the Tuscaloosa Sheriff's Department, the Northport Police Department, and the Alabama Bureau of Investigation; and (2) nineteen medical providers in Tuscaloosa, Alabama where Defendant may have sought treatment.[2] (Docs. # 112 at 2; 117 at 1). The subpoenas directed at the law enforcement agencies request the following information:

> Your entire file, including, but not limited to, all records, writings, documents, photos, videos, audio recordings, reports, or other written material contained in your file, in your possession or under your control of TERRY JACKSON BUNN, JR. (DOB xx/xx/xxxx, SSN: xxx-xx-xxxx) listed as a Witness, Person of Interest, Suspect, and/or Defendant.

(Docs. # 112 at 3; 117 at 2). The subpoenas issued to the Tuscaloosa medical providers seek:

> Your entire file, including but not limited to, all medical records in entirety, third-party records, admission/discharge records, medication/pharmacy records, films, scans, photos, videos, audio recordings, writings/notes, laboratory and test results, documents, reports, alcohol/drug abuse records, Psychiatric records, sexually transmitted disease records, or other written material contained in your file, in your possession or under your control of TERRY JACKSON BUNN, JR. (DOB xx/xx/xxxx, SSN: xxx-xx-xxxx).

(Doc. # 112 at 5).

Defendant urges the court to quash the subpoenas and issue a protective order because the requests are unlimited in time and scope and seek irrelevant and privileged information. (*See generally* Doc. # 112). Prior to the filing of this Motion, counsel discussed their relative positions

---

[2] Although Defendant informed Plaintiff's counsel that he only sought treatment from three of the nineteen medical providers over the last five years, Plaintiff informs the court that Defendant has consistently refused to identify his treating physicians and/or counselors outside this five-year timeframe. (Doc. # 114 at 6). According to Plaintiff, Defendant did not supply this information in his Rule 26 disclosures, in response to Plaintiff's discovery requests, or in response to several personal telephone conversations and letters between Plaintiff's and Defendant's counsel. (*Id.*).

on the proposed subpoenas on at least two occasions, but no agreement was reached. (Doc. # 112 at 1-2).

## II.  Analysis

Although he has not framed his arguments in these terms, the court gathers that Defendant objects to the issuance of the subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii)-(iv). (*See generally* Docs. # 112, 117). These provisions mandate that a court quash or modify a subpoena that either "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Generally, a party does not have standing to challenge a non-party subpoena. *See Barger v. First Data Corp.*, 2018 WL 6591883, at *3 (N.D. Ala. Dec. 14, 2018). However, standing may be established based on that party's personal right or privilege over the subpoenaed information. *Id*. Furthermore, that party's right must be balanced against the relevance and proportionality of the requested records to the needs of the case. *Id*.

Defendant also requests the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c), which states that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Meide v. Pulse Evolution Corp.*, 2019 WL 1518959, at *5 (M.D. Fla. Apr. 8, 2019) (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005)).

Unlike a Motion to Quash, "[t]he decision to enter a protective order is within the court's discretion and does not depend on a legal privilege." *Id.*

The scope of discovery that may be sought through a Rule 45 non-party subpoena is the same permissible scope under Federal Rule of Civil Procedure 26(b):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*See Stevenson v. Johnson Bros. Corp.*, 2019 WL 1083781, at *3 (N.D. Ala. March 7, 2019) (citing *Giambrone v. Kearney & Co., P.C.*, 2017 WL 2538705, at *1 (M.D. Fla. June 12, 2017)).

After carefully reviewing the parties' submissions, the court concludes that Defendant's Motion to Quash is due to be denied because his request for protection is more appropriately cast as a Motion for a Protective Order. Having said that, the court concludes that Plaintiff's subpoenas are due to be limited in both time and scope pursuant to a protective order.

### A. Defendant's Standing to Quash the Non-Party Subpoenas

As an initial matter, Plaintiff challenges Defendant's standing to quash the non-party subpoenas. (Doc. # 114 at 2-3, 7). A party's standing to challenge a non-party subpoena may be established based on that party's personal right or privilege over the subpoenaed information. *See Barger*, 2018 WL 6591883, at *3. District courts have found a "personal right" to subpoenaed materials "in limited circumstances, including personal bank records, previous employment, social networking accounts, and webmail boxes." *Cellairis Franchise, Inc. v. Duarte*, 193 F. Supp. 3d 1379, 1381 (N.D. Ga. 2016) (citing *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D.

Cal. 2010) (listing cases)). By contrast, "privilege" refers to the "protections afforded by the rules of evidence." *Id*.

Here, Defendant aims to either prevent or limit the production of sensitive materials in the form of prior criminal records and medical information relating to his treatment for a sexually transmitted disease, drug/alcohol abuse, or other mental health issues (to the extent that any such records exist). He has not, however, asserted any judicially accepted personal right or evidentiary privilege outside of the Psychotherapist-Patient Privilege addressed below. While the court recognizes Defendant's desire to keep such information private, he has not provided any authority indicating that he has standing to quash the non-party subpoenas directed at the law enforcement agencies or the non-mental healthcare providers. But, even if Defendant lacks standing to quash the non-party subpoenas, he may still challenge them through a motion for a protective order. *Ballard v. Wilshire Ins. Co.*, 2018 WL 6164333, at *1 (N.D. Ga. Mar. 29, 2018) (finding that "defendants may move for a protective order regardless of standing for a motion to quash") (citing *Kemper v. Equity Ins. Co.*, 2016 WL 7428215, at *6 (N.D. Ga. Apr. 29, 2016)). Consequently, the Defendant's Motion to Quash is due to be denied, but his Motion for a Protective Order is due to be granted within the parameters discussed below.

### B. Subpoenas Directed at Law Enforcement Agencies

Plaintiff's first group of subpoenas request that the Northport Police Department, the Tuscaloosa Police Department, the Tuscaloosa Sherriff's Department, and the Alabama Bureau of Investigation produce their entire file in any cases listing Defendant as a witness, person of interest, suspect, and/or Defendant. (Doc. # 112 at 3). Defendant objects to the subpoenas because they are unlimited in time and scope and seek irrelevant information. (Docs. # 112 at 2; 117 at 1-2). Defendant proposes limiting the subpoena requests to cases where Defendant has been charged

with sexual assault in the five years prior to the date of the alleged assault of the decedent—July 2, 2010 to July 2, 2015. (Doc. # 118 at 4). In an effort to compromise, Plaintiff suggests a ten-year limitation.[3]

The court agrees that the request is overly broad and due to be limited in time and scope. As currently phrased, the subpoenas seek the production of any and all criminal records relating to Defendant, no matter how far removed in time. As a starting point, the court adopts a midway approach and limits the discoverable time period to seven years prior to the date of the alleged assault—July 2, 2008 to July 2, 2015. Additionally, because Plaintiff's wrongful death claim is premised on Defendant's alleged intentional conduct of imprisoning and sexually assaulting the decedent, the scope of the subpoena requests must be limited to cases involving sexual assault. Records relating to other types of offenses are irrelevant to the subject matter of this case and exceed the permissible scope of discovery.[4]

Defendant also argues that Plaintiff's subpoenas, which seek information relating to any prior incidents of sexual assault involving Defendant, constitute an improper attempt to obtain discovery on inadmissible character evidence. (Doc. # 112). First, the court reminds Defendant that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).[5] In any event, in civil cases involving sexual assault, Federal Rule of Evidence 415 allows a court

---

[3] Plaintiff's response brief reveals that there may have been a misunderstanding between the parties as to what time frame Defendant proposed. In his brief, Plaintiff argues that Defendant's proposal would "unreasonably limit discovery to incidents during or after 2014, only *one year* before [Defendant] assaulted Megan." (Doc. # 114 at 4) (emphasis in original). However, Defendant has since clarified (in an informal email exchange with Plaintiff's counsel and the court) that he proposes a time limitation of five years prior to the date of the alleged assault.

[4] The court notes that Plaintiff has not voiced any objection to limiting the scope of the subpoenas to only cases involving sexual assault. Indeed, all of Plaintiff's arguments focus solely on the relevance and admissibility of such information.

[5] Indeed, Defendant's arguments relating to the admissibility of evidence are better suited to a pretrial motion in limine. The Federal Rules of Civil Procedure require the court to determine whether information is relevant (not admissible) in considering whether the information is discoverable.

to admit evidence that a party committed another sexual assault. Fed. R. Evid. 415. Contrary to Defendant's assertion, this rule supersedes the general ban on "propensity" or "character" evidence announced in Federal Rule of Evidence 404(b). *See Medina v. United Christian Evangelistic Ass'n*, 2009 WL 5066675, at *1 (S.D. Fla. Dec. 15, 2009). Such information may also be relevant to Defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" relating to his alleged assault of the decedent. Fed. R. Evid. 404(b)(2). Thus, there are several relevant purposes supporting Plaintiff's subpoena requests for records on prior sexual assault cases involving Defendant.

Finally, the court declines to the limit the subpoena requests to only cases where Defendant was formally *charged* with sexual assault. Again, Plaintiff's subpoenas require the law enforcement agencies to produce their entire file in any cases listing Defendant as a witness, person of interest, suspect, and/or Defendant. (Doc. # 112 at 3). Defendant characterizes this request as a fishing expedition because Plaintiff "cannot show how this information is relevant as to whether there was an assault by [Defendant] that is causally related to the suicide of Megan Rondini." (*Id.* at 4). But, as explained above, there are several relevant purposes underlying Plaintiff's request for information relating to prior incidents of sexual assault involving Defendant. Such information is particularly relevant in cases where Defendant was a person of interest, suspect, and/or Defendant because *Defendant's* actions were the subject of police investigation. By contrast, the court agrees that Plaintiff is not entitled to records of sexual assault cases where Defendant was only a witness. These records do not provide the same relevant nexus to the claims and defenses at issue in this case, involving Defendant's alleged sexual assault of the decedent. Accordingly, Plaintiff may seek information from the law enforcement agencies relating to any sexual assault

7

cases where Defendant was a person of interest, suspect, and/or Defendant from July 2, 2008 to July 2, 2015.

### C. Subpoenas Directed at Medical Providers

Plaintiff also wishes to subpoena nineteen medical providers in Tuscaloosa, Alabama for records relating to any sexual transmitted disease (STD), psychiatric evaluations, and alcohol/drug abuse. (Doc. # 112 at 5). Specifically, the subpoenas request the following information:

> Your entire file, including but not limited to, all medical records in entirety, third-party records, admission/discharge records, medication/pharmacy records, films, scans, photos, videos, audio recordings, writings/notes, laboratory and test results, documents, reports, alcohol/drug abuse records, Psychiatric records, sexually transmitted disease records, or other written material contained in your file, in your possession or under your control of TERRY JACKSON BUNN, JR. (DOB xx/xx/xxxx, SSN: xxx-xx-xxxx).

(*Id.*). Similar to his objections to the law enforcement subpoenas, Defendant objects that the subpoenas are unlimited in time and scope.[6] He also asserts specific objections to the three delineated categories of records in the subpoena: STD records, psychiatric records, and drug/alcohol abuse records. The court addresses each argument in turn and concludes that Plaintiff is entitled to discovery of these records under the following limitations.

As a threshold matter, the court agrees that Plaintiff is not entitled to Defendant's medical records beyond the seven-year timeframe referenced above. Any medical records prior to July 2, 2008 appear to be too attenuated to aid Plaintiff's claims stemming from the alleged July 2, 2015 assault. Plaintiff also may not discover a medical provider's *entire* file on Defendant, including general health records of routine vaccinations and other common sicknesses. These records are not

---

[6] Prior to the filing of this Motion, Defendant informed Plaintiff's counsel that he only sought treatment from three out of the nineteen medical providers in the last five years: Druid City Hospital, Emergi-Care, and Crimson Care. (Doc. # 112 at 5). Defendant offered to withdraw his objection to the issuance of the subpoenas to those three entities as long as Plaintiff agreed to limit the requests to the five years prior to the date of the alleged assault. (*Id.*). He also suggested a redaction of any information of a non-party. (*Id.*). Plaintiff agreed to redact all non-party information, but refused Defendant's time limitation proposal. (*Id.* at 2). As a result, the court's analysis applies to all nineteen subpoena requests.

relevant to the claims and defenses at issue in this case premised on Defendant's alleged imprisonment and sexual assault of the decedent and its causal relationship to her eventual suicide. As explained more thoroughly below, the scope of Plaintiff's request is due to be limited to non-privileged records concerning the treatment of an STD (if any exist), psychiatric evaluations, and drug/alcohol abuse.

As to the discovery of any records relating to the treatment of an STD, Plaintiff alleges in his most recent Complaint that the Sheriff's Department investigation following the alleged assault "indicated that Megan tested positive for a sexually transmitted disease that she contracted from having sexual contact with Defendant." (Doc. # 100 at ¶ 27). Defendant argues Plaintiff's subpoenas for records relating to Defendant's treatment of any STD is due to be quashed because Plaintiff cannot prove (1) that the decedent contracted an STD from Defendant since he has never been diagnosed with an STD or (2) that the STD was a causal factor leading to her suicide. (Doc. # 112 at 6-7). Defendant further asserts that it is far more likely that the decedent contracted the STD from the individual she had sexual intercourse with on the morning of July 1, 2015, prior to the alleged assault. (Docs. # 112 at 7; 112-3). However, the decedent's treating psychiatrist reported that "in the aftermath of the assault, [Megan] was unable to get proper care as a rape victim and later found out that she had contracted Chlamydia as a result of the rape." (Docs. # 114 at 8-9; 114-1 at 2). Thus, medical records documenting Defendant's treatment for an STD (again, if any exist) could be relevant to determine the severity and source of trauma the decedent experienced leading up to her eventual suicide. To the extent that Defendant argues that Plaintiff has failed to establish a foundation that the decedent's STD had any causal relationship to her suicide or that Plaintiff's experts are not qualified to testify to the same, that argument is better advanced in a pretrial motion in limine. Accordingly, the court determines that Plaintiff is entitled

to the discovery of medical records addressing Defendant's treatment for an STD from July 2, 2008 to July 2, 2015.

Next, Defendant asserts that records regarding any treatment for dug, alcohol, or sexual addiction are not relevant to whether the decedent was falsely imprisoned and sexually assaulted. (Doc. # 118 at 6-7). The court disagrees. As Plaintiff correctly notes, these records may be relevant in evaluating Defendant's mental state or motive on the evening in question. In particular, the issue of intoxication or drug/alcohol abuse could also speak to the reliability of Defendant's memory and testimony. Again, Defendant's argument that Plaintiff has not established a foundation for his asserted theories of relevancy is more appropriate for a pretrial motion in limine. At present, the court is satisfied that records regarding Defendant's treatment for drug, alcohol, or sexual addiction are relevant to Defendant's mental state on the evening of the alleged assault.

Finally, Defendant contends that any records relating to his treatment for drug/alcohol abuse and other mental health issues by any licensed psychologist, licensed psychiatrist, or licensed psychological technician is privileged, and therefore not discoverable, under Alabama's Psychotherapist-Patient Privilege.[7] *See* Alabama Code § 34-36-2 (1975); *see also* Ala. R. Evid. 503. Rule 503 provides as follows:

> (B) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient's mental or emotional condition, *including alcohol or drug addiction*, among the patient, the patient's psychotherapist, and any persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

Ala. R. Evid. 503 (emphasis added). Indeed, Plaintiff does not dispute the application of the Psychotherapist-Patient Privilege with respect to Defendant's communications with licensed

---

[7] Because Defendant has not provided Plaintiff with a privilege log, the court cannot determine which, if any, of the medical providers have records which may be protected by the Psychotherapist-Patient Privilege.

mental healthcare professionals. As such, any medical records involving the treatment of Defendant by a licensed psychologist, licensed psychiatrist, or licensed psychological technician are privileged and not discoverable.

## III.  Conclusion

For the reasons explained above, Defendant's Motion to Quash and Motion for Protective Order (Doc. # 112) and Supplemental Motion to Quash and Protective Order (Doc. # 117) are due to be granted in part and denied in part. Defendant's Motion to Quash is due to be denied, but the requests made in Plaintiff's subpoenas are due to be limited in both time and scope pursuant to a protective order. In addition, given the sensitive nature of the information sought, and in the interest of protecting the privacy of both parties, the court will enter its standard Protective Order. Furthermore, the parties shall submit a proposed Amended Scheduling Order extending the deadlines for discovery and Plaintiff's response to Defendant's Motion for Summary Judgment.

An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 7, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE