UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |  | |
|---|---|---|---|
| **MICHAEL W. RONDINI, et al.,** | } | | |
| | } | | |
| **Plaintiffs,** | } | | |
| | } | | |
| v. | } | Case No.: 7:17-cv-01114-RDP | |
| | } | | |
| **TERRY J. BUNN,** | } | | |
| | } | | |
| **Defendant.** | } | | |

**MEMORANDUM OPINION**

This case is before the court on Defendant Terry J. Bunn, Jr.'s ("Defendant") Motion to Strike Plaintiff's Expert Witnesses. (Doc. # 140). The Motion has been fully briefed (*see* Docs. # 140, 144, 147) and is ripe for review. After careful review, and for the reasons discussed below, the court concludes that Defendant's Motion to Strike is due to be denied as to Dr. Arnold and granted in part and denied in part as to Dr. Rezaee.

**I.     Background**

Plaintiffs, the Rondinis, are Megan Rondini's parents and have brought this wrongful death action as the Personal Representative of the Estate of Megan Rondini, their deceased daughter. Plaintiffs allege that Defendant intentionally imprisoned and sexually assaulted the decedent on the evening of July 1, 2015, which led to the decedent's eventual suicide on February 26, 2016. (*See generally* Doc. # 100).

Defendant moves to strike two of Plaintiffs' three proposed expert witnesses, claiming they were not timely disclosed under Federal Rule Civil Procedure 26(a)(2)(A). (Doc. # 140). Under the applicable Scheduling Order, Plaintiffs were required to disclose any and all retained experts

1

by November 9, 2018, and discovery was to be completed by April 22, 2019. (Docs. # 98, 107). On November 9, 2018, Plaintiffs disclosed to Defendant a single expert witness, Dr. Barbara Ziv, and provided her expert report. (Doc. # 140 at 2, ¶¶ 4-5). Plaintiffs did not disclose their intention to use Dr. Ziba Rezaee or Dr. Susan Arnold until they filed their response to Defendant's Motion for Summary Judgment on August 12, 2019. (Docs. # 140 at 4, ¶¶ 17,19; # 139 at 32-33).

Defendant argues that because of this late disclosure, Plaintiffs are barred under Federal Rules of Civil Procedure 26(a)(2)(B)-(C) and 37(c)(1) from using Dr. Rezaee's and Dr. Arnold's testimony and/or "expert" opinions to support their claims due to the "high level of surprise and prejudice" they have and will experience. (Doc. # 144 at 5, 11). Plaintiffs argue that Dr. Rezaee and Dr. Arnold are fact witnesses, not expert witnesses, "because their testimony is based on personal observations during the course of [Megan's] treatment." (Doc. # 144 at 1).

## II. Standard of Review

### A. The Rule 26(a)(2)(A) and Rule 37(c) Disclosure Standards

Under Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witnesses it may use at trial." This disclosure must include "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). However, "Rule 26(b)(4) anticipates that not all expert witnesses will prepare reports[] and allows the taking of depositions of non-reporting experts. . . . A treating physician is not always a specially retained expert witness under Fed. R. Civ. P. 26(a)(2)(B)." *Brown v. Best Foods, A Div. of CPC Int'l., Inc.*, 169 F.R.D. 385, 387 (N.D. Ala. 1996). Federal Rule 26(a)(2)(C) provides:

> [I]f a witness is not one who has to provide a written report, but the witness will present evidence under Rule 702, 703, or 705, then the subject matter on which the

witness is expected to present evidence under Rules 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify[,] must be disclosed.

*Trinidad v. Moore*, 2016 WL 5341777, at *2 (M.D. Ala. Sept. 23, 2016). And finally, these disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

**III.   Analysis**

"[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1252, 1265 (11th Cir. 2008). The rule also seeks to allow for opposing counsel to have an "opportunity to depose [the disclosed expert], proffer a rebuttal expert, or file a *Daubert* motion." *Reyes v. BJ's Restaurants, Inc.*, 774 F. App'x 514, 517 (11th Cir. 2019). The rules governing expert witnesses are found in Federal Rule of Evidence 702: "*If scientific,* technical, or other specialized *knowledge will assist the trier of fact* to understand the evidence or to determine a fact in issue" an expert "may testify *thereto.*" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (quoting Fed. R. Evid. 702). "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Id.* at 591.

However, under Federal Rule of Evidence 701 -- the rule governing lay witnesses -- a lay witness may testify in the form of an opinion, but such testimony must be limited to opinion evidence that is: (1) "rationally based on the witness's perception;" (2) "helpful to clearly

understanding the witness's testimony or to determining a fact in issue;" and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay witness is also not required to give a written report under Rule 26(a)(2)(B). *Brown*, 169 F.R.D. at 387. Indeed, "the ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses." *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).

The witnesses at issue here are treating physicians:

> [T]reating physicians are not treated as experts to the extent their testimony is based on observations during the course of treatment unless their testimony was acquired or developed in anticipation of litigation or for trial. However, as fact witnesses, their opinions must be based on facts of which they have personal knowledge. In addition, testimony regarding causation will not be allowed unless the determination of causation was *necessary* for treatment and their opinions are helpful to a clear understanding of the witnesses' testimony.

*Phillips v. Am. Honda Motor Co.*, 438 F. Supp. 2d 1328, 1330 (S.D. Ala. 2006) (emphasis added) (internal citations omitted) (citing *Henderson*, 409 F.3d at 1300). "The Eleventh Circuit has explained that 'the testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court.'" *Trinidad v. Moore*, 2016 WL 5341777, at *2 (M.D. Ala. Sept. 23, 2016). A treating physician may testify as to his or her "opinions . . . based on . . . experience as a physician and [that are] clearly helpful to an understanding of his [or her] decision making process in the situation." *Henderson*, 409 F.3d at 1300 (quoting *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996)).

Plaintiffs rely on the medical records, depositions, and affidavits of Dr. Rezaee and Dr. Arnold. Both worked with and treated Megan after the alleged sexual assault. (Doc. # 139 at 32). As Defendant correctly points out in their response to Defendant's Motion for Summary Judgment, Plaintiffs contend that "three board certified psychiatrists have offered *expert medical opinions*

4

that Megan was the victim of a sexual assault and/or false imprisonment that led to serious emotional distress and, eventually, to Megan's death." (*Id.*) (emphasis added). If Plaintiffs intend to use Dr. Rezaee and Dr. Arnold as expert witnesses to show causation, Plaintiffs would be precluded from doing so due to their failure to timely disclose such use to Defendants. *See Trinidad*, 2016 WL 5341117, at *4 ("A failure to make the appropriate disclosures under Rule 26(a)(2)(C) precludes a party from introducing the testimony at trial unless the failure to comply was substantially justified or harmless.").

However, in their response to Defendant's Motion to Strike, Plaintiffs acknowledge that Dr. Rezaee and Dr. Arnold are merely fact witnesses, and thus the Rule's disclosure requirements do not apply. Dr. Rezaee and Dr. Arnold may testify based solely on their personal observations of Megan while working with her during her therapy sessions; they may not testify as to "scientific, technical, or other specialized knowledge," including causation *Daubert*, 509 U.S. at 589.

After careful review, the court concludes that Dr. Rezaee and Dr. Arnold are indeed proper fact witnesses.

### A. Dr. Rezaee

Dr. Rezaee's affidavit presents her education, experience, and knowledge gained from approximately seven years of professional experience as a board-certified psychiatrist. (Doc. # 139-2 at 14). Dr. Rezaee "served as the treating psychiatrist for [Megan] in the months prior to her untimely death and had directly treated her in medical visits for 3 appointments on 10/15/15, 10/26/15, and 12/7/15." (*Id.*). Dr. Rezaee also "supervised and extensively collaborated in the therapy sessions conducted under [an intern] . . . for supportive and trauma-based therapy for a total of 6 visits from October 2015 until January 2016." (*Id.*). Dr. Rezaee's affidavit speaks to her "reasoned medical opinion" as to the cause of Megan's clinical depression and PTSD. (*Id.* at 17).

5

Because Dr. Rezaee's was Megan's treating physician, she is properly categorized as both a fact witness and an expert witness. Generally, such witnesses may only testify as to their "personal knowledge, including the treatment of the party." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011). Because these witnesses may "properly provide limited opinion testimony on certain subjects within their professional ken[,] . . . the Eleventh Circuit has instructed [courts] to ensure that the requirements of the Federal Rules are not 'evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Kaplan v. Kaplan*, 2012 WL 1660605, at *1 (M.D. Fla. May 11, 2012); *see Williams*, 644 F.3d at 1317.

Here, Dr. Rezaee's diagnosis of Megan's psychological issues is not hypothetical; rather, it is based on Dr. Rezaee's personal experience and observations of Megan during her treatment. In order to treat Megan, it was necessary for Dr. Rezaee to seek to understand the "trauma" that spurred her PTSD. Here, Plaintiffs contend the cause of Megan's PTSD is connected to the alleged sexual assault because before the sexual assault, there is no record evidence suggesting that Megan had any mental health issues. (Doc. # 139-2 at 15). In her treatment of Megan, Dr. Rezaee reached this same conclusion. (*Id.*). To be sure, "because a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the *cause* of the plaintiff's injuries, opinions as to the cause of injuries do not require a written report if based on their examination or treatment of the patient." *Brown*, 169 F.R.D. at 388-89 (emphasis added).

Dr. Rezaee's purported testimony is based on personal knowledge gained during her treatment sessions with Megan, and it does not bleed into the realm of hypotheticals based upon scientific, technical, or other specialized knowledge. *See Sweat v. United States*, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015) ("[I]f a treating physician acquired the opinions that are the subject of the testimony directly through treatment of the plaintiff, the treating physician cannot

be forced to file a written report required by Rule 26(a)(2)(B)."). Dr. Rezaee stated that in her clinical opinion, "based on the extensive medical and psychiatric interview" she had with Megan, "which entailed obtaining thorough psychosocial, family, childhood, and medical history," Megan "did not suffer from any significant psychological or psychiatric issues/diagnoses prior to the incident with [Defendant], which [Megan] described to [her] in detail as a sexual assault and rape." (Doc. # 139-2 at 15). Therefore, Dr. Rezaee, a treating physician who considered Megan's diagnosis and prognosis, may give an opinion as to the cause of the decline of Megan's mental health, and this would not require Dr. Rezaee to give a written report if the opinion is based on the examination and treatment of Megan. *See Brown*, 169 F.R.D. at 388-89.

However, to the extent that Dr. Rezaee opines as to the cause of Megan's decision to commit suicide, this is outside of the scope of her care and treatment because she was not treating Megan at the time of her suicide. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008) ("[O]pinions on causation . . . clearly fall within Federal Rule of Evidence 702's scope of 'scientific knowledge' and must satisfy *Daubert*."); *Bryan v. Whitfield*, 2015 WL 11109792, at *3 (N.D. Fla. July 15, 2015) ("[T]he Eleventh Circuit has found that causation opinions typically fall outside the scope of a treating physician's care and treatment and thus cross the line from lay to expert testimony."). Dr. Rezaee's testimony that "based on a reasonable medical probability[,] [Megan's] suicide months after the sexual incident with [Defendant] was directly a result of the devastating trauma and severe/active PTSD that took a toll on her psychological, physical, and functional health" is the type of opinion testimony that a retained expert would be expected to give. It is not appropriate testimony from a former physician who was not longer seeing the patient. (*See* Doc. # 139-2 at 18)

Because Dr. Rezaee is a fact witness, she may testify only as to her personal observation

7

of Megan and any information she learned from Megan during treatment, including her opinions as to the decline in Megan's mental health that she observed throughout the time she treated Megan. *See Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1317 n.23 (11th Cir. 2014) ("A treating physician providing lay testimony can testify narrowly, limited to personal knowledge resulting from providing medical care, involving consultation, examination, or treatment of a patient plaintiff."). Thus, while the court will apply boundaries on her testimony, Dr. Rezaee is not wholly precluded from testifying under Rule 26(a)(2)(B) or (C) because Plaintiffs were not required to disclose her as an expert witness.

If Dr. Rezaee were to be categorized as an expert witness (and, to be sure, she is not insofar as she will only be permitted to testify to her personal observations while treating Megan), the court would be required to evaluate whether the failure to produce Dr. Rezaee as an expert was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *Gordon v. Wal-Mart Supercenter*, 2009 WL 3850288, at *5 (S.D. Ala. Nov. 12, 2009). "In determining whether the failure to disclose was justified or harmless, the Eleventh Circuit has directed [courts] to consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Gordon*, 2009 WL 3850288, at *5 (internal quotation marks omitted) (quoting *Lips v. City of Hollywood*, 2009 WL 3048895, at *11 (11th Cir. Sept. 25, 2009)). And, "[t]he burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Id.*

Here, Defendant argues that allowing Dr. Rezaee to testify as an expert is highly prejudicial due to surprise and the fact that he was unable to depose her. The court would agree if Dr. Rezaee was a bona fide expert witness, because Plaintiffs give no substantial justification for not disclosing Dr. Rezaee. However, Dr. Rezaee, as pointed out above, is both a fact witness and expert witness.

8

Therefore, as her disclosure was not necessary under Rule 26(a)(2)(A)-(C), no substantial justification is needed. Allowing Dr. Rezaee to testify as to her own personal observations of Megan during her treatment would not be prejudicial. Further, and in any event, to ensure no unfair surprise or prejudice, Defendant would be permitted to depose Dr. Rezaee at his expense prior to trial.

### B. Dr. Arnold

As with Dr. Rezaee, Plaintiffs seek to use Dr. Arnold as a fact witness. Dr. Arnold is a board-certified psychiatrist who works at the University of Alabama Student Health Center. (Doc. # 122-15 at 8). She has been licensed to practice medicine for approximately 23 years. (*Id.*). Dr. Arnold saw Megan twice: once on September 25, 2015, and the other on October 2, 2015. (*Id.* at 13). Dr. Arnold primarily testifies as to what Megan reported to her, which was that Megan had "a traumatic history of rape this summer by a 34-year-old man named Terry Jackson Bunn in Cottondale. [Megan] was unable to tell me more details due to extreme emotions of crying, flushing, and shaking." (*Id.* at 16). Dr. Arnold also testified as to Megan's affect during the two sessions, describing it as "tearful, sad, flushing, overwhelming emotions shown . . . [and that it was] painful to see." (*Id.* at 17).

As with Dr. Rezaee, Dr. Arnold was Megan's treating physician, so she is properly categorized as both a fact witness and an expert witness. However, unlike Dr. Rezaee, Dr. Arnold does not opine as to the cause of Megan's suicide; she only testifies as to the cause of Megan's PTSD and anxiety, based on what Megan described to her. None of her testimony crosses into scientific, technical, or other specialized knowledge. *See Hooten v. Florence Hotel Co. LLC*, 2013 WL 12138857, at *1 (N.D. Ala. Apr. 10, 2013) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the

9

treatment of the party.").

Therefore, Dr. Arnold is properly classified as a fact witness, and her testimony will not be excluded. Plaintiffs were not required to disclose Dr. Arnold as an expert witness under Rule 26(a)(2)(B)-(C). Again, and in any event, Defendant may, at his own expense, depose Dr. Arnold prior to trial.

**IV.     Conclusion**

For the reasons discussed above, Defendant's Motion to Strike (*see* Doc. # 140) is due to be granted in part and denied in part. An Order consistent with the Memorandum Opinion will be entered.

**DONE** and **ORDERED** this January 13, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE