FILED
2021 May-07  AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

REL: May 7, 2021

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2020-2021

————————————

### 1190439

————————————

**Michael W. Rondini, as personal representative of the Estate of Megan Rondini, deceased**

**v.**

**Terry J. Bunn, Jr.**

**Certified Question from the United States District Court for the Northern District of Alabama, Southern Division (7:17-cv-1114-RDP)**

MITCHELL, Justice.

1190439

This case involves a wrongful-death claim filed by Michael W. Rondini ("Rondini"), as personal representative of the estate of Megan Rondini ("Megan"), to recover damages for the death of his daughter Megan, who committed suicide almost eight months after she was allegedly sexually assaulted while enrolled as a student at the University of Alabama. Rondini sued Megan's alleged assailant, Terry J. Bunn, Jr., in the United States District Court for the Northern District of Alabama, Southern Division ("the federal court"), claiming that Bunn's alleged sexual assault and false imprisonment of Megan proximately caused her death. After Bunn moved for summary judgment, the federal court concluded that it would be prudent for this Court to weigh in on whether Rondini's wrongful-death claim was viable under Alabama law.

In accordance with Rule 18, Ala. R. App. P., the federal court certified the following question of law for this Court's review:

> "Whether a decedent's suicide, which occurs several months (in this case, nearly eight months) after a defendant's intentional tort (i.e., sexual assault and/or outrage) is a superseding cause breaking the chain of causation between the intentional tort and the decedent's death?"

1190439

We now answer that question as follows: The suicide of a person who was sexually assaulted does not constitute a superseding cause that, as a matter of law, breaks the chain of causation between the sexual assault and the victim's death so as to absolve the alleged assailant of liability.

<u>Facts and Procedural History</u>

In its certification to this Court, the federal court provided the following background information:

> "On July 1, 2015, 20-year-old [Megan] met [Bunn], a 34-year-old man, at a Tuscaloosa pub. Megan left the pub with [Bunn] and they proceeded to his house in Cottondale, Alabama. While at [Bunn's] house, Megan claimed Bunn falsely imprisoned and sexually assaulted her. Bunn denies Megan's claim.

> "After Megan complained of his conduct, the police investigated. Bunn initially told the police that Megan was not at his house on the night of July 1. After consulting with his attorney, however, he admitted Megan was there. He also admitted they had sex, but he claimed that it was consensual. The court has determined that what occurred on the night of July 1 at Bunn's house is a question for a jury to resolve."

After the alleged sexual assault, Megan was treated by a therapist, who diagnosed her with post-traumatic stress disorder ("PTSD") and anxiety stemming from PTSD. She resumed attending classes that fall

1190439

but eventually withdrew from the University of Alabama and returned to her parents' home in Austin, Texas, where she sought additional counseling from other health-care providers who similarly concluded that she was suffering from PTSD and anxiety, as well as depression.

In early 2016, Megan enrolled at Southern Methodist University ("SMU") in Dallas. She met with a local psychiatrist after moving to Dallas and eventually sought counseling from the SMU health clinic. An intake form she completed at the SMU health clinic on February 24, 2016, indicates that she was experiencing suicidal thoughts and had a history of PTSD, anxiety, and depression stemming from a sexual assault that had occurred the previous summer. Two days later, on February 26, 2016, Megan committed suicide.

Rondini sued Bunn in the federal court, seeking relief under Alabama's wrongful-death statute, § 6-5-410, Ala. Code 1975, which authorizes an action and the recovery of damages against a person whose "wrongful act, omission, or negligence" causes the death of another person. § 6-5-410(a). Rondini alleged in the operative complaint (1) that "Bunn unlawfully and intentionally detained and imprisoned Megan" and (2) that

4

1190439

Bunn "forcefully and intentionally raped Megan." Rondini further alleged that "Megan's death was the direct and proximate result of [those] intentional and malicious actions."

Bunn denied the allegations of false imprisonment and sexual assault. He further asked the federal court to dismiss Rondini's wrongful-death claim, arguing, among other things, that Megan's suicide was an intervening or superseding cause that broke the causal connection between his alleged wrongful actions and her death.[1] Citing <u>Prill v. Marrone</u>, 23 So. 3d 1 (Ala. 2009), and <u>Gilmore v. Shell Oil Co.</u>, 613 So. 2d 1272 (Ala. 1993), the federal court denied Bunn's motion, stating that those cases stand only for the principle that suicide is a superseding cause that breaks the chain of causation flowing from a defendant's negligent actions -- no Alabama court had extended that principle to wrongful-death claims stemming from intentional torts committed against an individual who later commits suicide.

---

[1]There is no functional distinction between the terms "intervening cause" and "superseding cause" as they have been used by the federal court and the parties in this case.

5

1190439

About two years later, Bunn moved for summary judgment. In that motion, he renewed his argument that Megan's suicide was a superseding cause that defeated Rondini's wrongful-death claim. After reviewing the evidence and concluding that Rondini had submitted substantial evidence to support the false-imprisonment and sexual-assault allegations underpinning his wrongful-death claim, the federal court again considered the question of whether a defendant's intentional conduct can be both the cause in fact and the proximate cause of a tort victim's suicide. It ultimately held that "a reasonable juror could conclude that [Bunn's] conduct was the cause-in-fact of Megan's suicide" but that "proximate causation is less certain." Rondini v. Bunn, 434 F. Supp. 3d 1266, 1278 (N.D. Ala. 2020). The federal court further concluded that this Court was "in the best position" to answer the key legal question remaining in the case -- "whether suicide is an intervening cause that breaks the chain of causation stemming from a defendant's intentional tort to the decedent's death" -- and it therefore stayed the case so that we could answer the certified question it posed. Id. at 1278-79. We accepted the federal court's request to answer the certified question.

6

1190439

<u>Analysis</u>

Both Rondini and Bunn have framed their arguments around this Court's decision in <u>Gilmore</u>, and we therefore begin our analysis with a review of that case.  In <u>Gilmore</u>, a 17-year-old boy, Michael Gilmore, went to visit a friend who worked at a convenience store.  After finding a handgun on a shelf under the cash register, Michael used that handgun to commit suicide behind the cashier's counter.  Michael's estate later sued the store, the store's owner, the franchisor (Shell Oil), and the friend/employee, alleging that they had "negligently or wantonly" allowed Michael to fatally injure himself with a handgun that he had found at the store.[2]  613 So. 2d at 1273.  After the trial court entered summary judgment in favor of the defendants, Michael's estate appealed.

The <u>Gilmore</u> Court began its analysis by noting that liability will be imposed in a negligence case only when the injury is a natural and probable consequence of a negligent act that an ordinarily prudent person should reasonably foresee would result in an injury.  613 So. 2d at 1274-

---

[2]Although it appears that Michael's estate alleged both negligence and wantonness, <u>Gilmore</u> addresses only the negligence claim.

7

1190439

75.  Indeed, the Court emphasized that a negligent party is ultimately not liable in spite of its negligence if " 'some independent agency intervenes and is the immediate cause of the injury.' " Id. at 1275 (quoting Hall v. Booth, 423 So. 2d 184, 185 (Ala. 1982)).  The Court explained that such an act breaks the chain of causation leading back to the initially negligent party if the act is by itself sufficient to be the sole cause in fact of the injury.  Id. at 1275.

The Gilmore Court further acknowledged that this Court had previously held that an injured party's own conduct could not be an intervening cause, see Louisville & Nashville R.R. v. Maddox, 236 Ala. 594, 601, 183 So. 849, 854 (1938), but clarified that such conduct might be if it (1) is so highly extraordinary or unexpected that it falls outside the realm of reasonable foreseeability as a matter of law and (2) goes beyond mere contributory negligence and is of a higher culpability level than the defendant's negligence.  Gilmore, 613 So. 2d at 1275 (citing 57A Am. Jur. 2d Negligence §§ 650 and 652 (1989)).  Applying this law to the facts before it, the Court explained that Michael's death was "an unexplainable tragedy" but was "not the ordinary and naturally flowing consequences of

1190439

the defendants' negligent conduct." 613 So. 2d at 1278. Rather, the Court concluded, "suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law, and civil liability will not be imposed upon a defendant for a decedent's suicide." Id. Thus, the Court determined, Michael's "act of intentionally and deliberately shooting himself in the head was unforeseeable as a matter of law and was sufficiently culpable to supersede the defendants' negligence as the proximate cause of Michael's death." Id. at 1275-76.

Since Gilmore, courts applying Alabama law have recognized that, in most circumstances, no action will lie to recover damages for allegedly causing another person's suicide. See, e.g., Vinson v. Clarke Cnty., 10 F. Supp. 2d 1282, 1303 (S.D. Ala. 1998) ("Under Alabama law, suicide generally functions as an efficient intervening cause which serves to break all causal connections between the alleged wrongful or negligent acts and the death at issue."). But this Court has recognized two exceptions to this principle: (1) when there is a custodial relationship between the defendant and the decedent that indicates that the defendant might have foreseen the decedent's suicide, such as when the decedent is being held

9

1190439

in a prison or hospital at the time of his or her death, and (2) when the defendant's actions are alleged to have created an "uncontrollable impulse" in the victim leading to suicide. Prill, 23 So. 3d at 8.

The federal court has explained that neither of these two exceptions apply here. First, it is undisputed that Megan and Bunn were in different states at the time of her death, and there has been no allegation that there was any custodial relationship between them. Second, Megan's death occurred almost eight months after the alleged sexual assault and after she had sought and received treatment from multiple health-care providers. In light of this passage of time and the evidence that Megan had consciously sought treatment, the federal court concluded that there was not substantial evidence that she took her life in a "delirium, frenzy, or rage" so as to implicate the second exception. Rondini, 434 F. Supp. 3d at 1277-78.

The parties have very different views about the scope of this Court's holding in Gilmore, but both seem to agree with the federal court's conclusion that neither of the exceptions to Gilmore's general rule apply here. Rondini instead argues that we should create a third exception for

10

1190439

cases in which the suicide is alleged to have been caused by a defendant's intentional, as opposed to negligent, actions.  He therefore urges us to conclude that Megan's suicide was not a superseding cause breaking the chain of causation leading back to Bunn. In contrast, Bunn argues that we should continue to apply the general rule set forth in <u>Gilmore</u> barring wrongful-death actions based on a suicide and, because neither of the two existing exceptions to that rule apply, urges us to hold that Megan's suicide was a superseding cause breaking the chain of causation between the alleged sexual assault and her death.  For the reasons explained below, we agree in principle with the view expressed by Rondini.  When a person commits suicide after an alleged sexual assault, that act does not as a matter of law break the chain of causation so as to absolve the alleged assailant of liability.

In addressing the parties' arguments, it is necessary to explicate <u>Gilmore</u>.  At its core, <u>Gilmore</u> was about whether the <u>negligent</u> actions of the defendants involved caused the decedent's death.  Accordingly, the analysis in that opinion was rooted in negligence law.  This case, however, involves a claim that Megan's death was caused by Bunn's <u>intentional</u>

1190439

actions.  We have previously recognized that intentional-tort claims are different from negligence (or wantonness) claims because, in intentional-tort cases, the tortfeasor specifically intended to cause injury to the victim.  See Ex parte Capstone Bldg. Corp., 96 So. 3d 77, 85-86 (Ala. 2012).   And traditional negligence concepts like foreseeability and proximate cause, which form the backbone of the negligence analysis in Gilmore, have a more limited application in intentional-tort cases.  See Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So. 2d 601, 607 (Ala. 1980) (explaining that "in cases of intentional or aggravated acts there is an extended liability and the rules of proximate causation are more liberally applied than would be justified in negligence cases"); see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 9 at 40 (5th ed. 1984) (explaining that in most cases involving intentional torts "[t]he defendant's liability for the resulting harm extends ... to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim" (footnote omitted)).

12

1190439

Alabama law is not unique in this respect.  Indeed, when the Supreme Court of New Hampshire considered a certified question similar to the one now posed to this Court, it cited Shades Ridge Holding as support for its declaration that "[t]he law of torts recognizes that a defendant who intentionally causes harm has greater culpability than one who negligently does so." Mayer v. Town of Hampton, 127 N.H. 81, 85, 497 A.2d 1206, 1209 (1985).  The Mayer court further explained that, in intentional-tort cases, "consideration of the degree of moral wrong and the seriousness of the harm" that the intentional tortfeasor intended was more relevant than foreseeability in light of "the policy behind imposing liability for intentional torts: compensating the victim and deterring intentional harm to others." 127 N.H. at 86, 497 A.2d at 1210.  Consistent with that approach, the Mayer court held that a wrongful-death action based on a suicide was viable if "the tortfeasor, by extreme and outrageous conduct, intentionally wronged a victim and ... this intentional conduct caused severe emotional distress in [the] victim which was a substantial factor in bringing about the suicide of the victim." 127 N.H. at 87, 497 A.2d at 1211.  The Mayer court concluded that, "[s]o long as the

13

1190439

defendant's wrongful act was a substantial cause of the suicide, there is no reason in such a case to undermine ... the policy behind intentional torts which extends a defendant's liability almost without limit to any actual harm resulting." Id.[3]

We agree with the fundamental rationale of Mayer and now hold that a wrongful-death action may be pursued against a defendant when there is substantial evidence both that the defendant sexually assaulted

---

[3]Other courts that have considered this issue have similarly allowed wrongful-death actions to proceed when there was substantial evidence that a defendant's intentional tort was the cause in fact of the tort victim's suicide. See, e.g., R.D. v. W.H., 875 P.2d 26, 31 (Wyo. 1994) ("[A]n actor will be liable when he intentionally commits a tort, in this case sexual assault, and the commission of that tort causes an emotional or psychiatric illness which is a substantial factor in bringing about the suicide of the victim" even though the actor may not have intended to cause that emotional or psychiatric illness); Tate v. Canonica, 180 Cal. App. 2d 898, 909, 5 Cal. Rptr. 28, 36 (1960) ("Consequently, we believe that, in a case where the defendant intended, by his conduct, to cause serious mental distress or serious physical suffering, and does so, and such mental distress is shown by the evidence to be 'a substantial factor in bringing about' the suicide, a cause of action for wrongful death results, whether the suicide was committed in a state of insanity, or in response to an irresistible impulse, or not." (internal citation omitted)); see also Clift v. Narragansett Television, L.P., 688 A.2d 805, 812 (R.I. 1996); Kimberlin v. DeLong, 637 N.E.2d 121, 128 (Ind. 1994); State ex rel. Richardson v. Edgeworth, 214 So. 2d 579, 586 (Miss. 1968).

1190439

the decedent and that the assault was a cause in fact of the decedent's later suicide.  In such cases, it is unnecessary to analyze whether the decedent's suicide was a foreseeable consequence of the sexual assault; liability may attach without regard to whether the defendant intended or could have reasonably foreseen that result.  Keeton et al., supra, § 9 at 40.

It is unnecessary for us to define today the universe of intentional torts that might appropriately give rise to a wrongful-death action based on a suicide.  The question certified by the federal court concerns an alleged sexual assault.  To answer that question, we need declare only that the suicide of a person who is the victim of one specific intentional tort -- sexual assault -- is not a superseding cause that will absolve the alleged assailant of liability as a matter of law.  Whether other intentional torts stemming from a defendant's extreme and outrageous conduct that causes severe emotional distress to the victim might also support a wrongful-death action after a suicide is a question for another day.[4]

_____

[4]The limitation of our holding to cases involving an allegation of sexual assault is similar to how we have confined the tort of outrage to cases involving extreme circumstances.  See Little v. Robinson, 72 So. 3d 1168, 1172 (Ala. 2011).  Although we have set forth some circumstances

1190439

## Conclusion

The federal court concluded that Rondini had produced substantial evidence to support his claim that Bunn had sexually assaulted Megan and that Bunn's actions were the cause in fact of Megan's suicide.  But, because it was unclear whether Alabama law would permit a finding that Bunn's actions were the proximate cause of Megan's death, the federal court asked us to decide whether a suicide that occurred several months after an alleged sexual assault was necessarily a superseding cause breaking the chain of causation leading to the suicide.  We now answer that question in the negative; suicide in such cases will not as a matter of law absolve the alleged assailant of liability.  The statement in Gilmore that suicide is unforeseeable as a matter of law, 613 So. 2d at 1275, was made in the context of a negligence case and does not apply in an intentional-tort case involving an allegation of sexual assault.

---

in which tort-of-outrage claims might be permitted, we have not attempted to identify every instance in which a tort-of-outrage claim might be viable.  See Wilson v. University of Alabama Health Servs. Found., P.C., 266 So. 3d 674, 677 (Ala. 2017) (explaining that the tort of outrage may be viable in some cases "outside the context" of the extreme circumstances identified in existing tort-of-outrage cases).

1190439

QUESTION ANSWERED.

Bolin, Shaw, Wise, Bryan, Mendheim, and Stewart, JJ., concur.

Parker, C.J., concurs in part and concurs in the result.

Sellers, J., concurs in the result.

1190439

PARKER, Chief Justice (concurring in part and concurring in the result).

I agree with the main opinion's holding (and analysis supporting that holding) that this Court's general rule that suicide is a superseding cause in negligence cases, see Gilmore v. Shell Oil Co., 613 So. 2d 1272, 1278 (Ala. 1993), does not apply to intentional-tort claims based on sexual assault. I understand the opinion's references to "as a matter of law" within its statements of the holding, see ___ So. 3d at ___, ___, ___, ___, to mean that suicide may be, but is not necessarily, a superseding cause in cases of this type. That is, suicide may or may not be a superseding cause in a particular sexual-assault case, depending on the facts. Of course, if, based on the evidence in a particular case, all reasonable jurors would have to find that suicide was a superseding cause, then the defendant would still be entitled to judgment "as a matter of law," by a summary judgment or a judgment as a matter of law during or after trial. Therefore, I do not understand today's answer to the certified question as deciding whether Megan Rondini's suicide was a superseding cause. To decide that fact-based issue would be outside our role of resolving the abstract legal issue conveyed by the certified question and would usurp

18

1190439

the federal court's role of applying our holding to the evidence and procedural posture before it. See generally <u>Holcim (US), Inc. v. Ohio Cas. Ins. Co.</u>, 38 So. 3d 722, 726-27 (Ala. 2009) (explaining that we are not restricted by federal court's phrasing of certified question).

I disagree, however, with the main opinion's apparent discarding of the requirement of proximate cause in sexual-assault/suicide cases. To understand this concern, some doctrinal background is necessary. First, the term "cause in fact" describes the requirement that there be a time-space causal relationship between the defendant's conduct and the plaintiff's harm. See W. Page Keeton et al., <u>Prosser and Keeton on the Law of Torts</u> § 41 at 264-65 (5th ed. 1984); <u>Restatement (Second) of Torts</u> § 870 cmt. <u>1</u> (Am. L. Inst. 1979); <u>Restatement (Third) of Torts: Liability for Physical and Emotional Harm</u> § 26, Reporters' Note cmt. a (Am. L. Inst. 2010); <u>id.</u> ch. 5. It is a question of scientific and logical sequence: Did the harm result in some way -- however unlikely, attenuated, or remote -- from the conduct? ("Cause in fact" is sometimes referred to as "factual cause," "actual cause," or "but-for cause." See, e.g., 1 Dan B. Dobbs et al., <u>The Law of Torts</u> ch. 17 (2d ed. 2011); <u>Restatement (Third)</u> § 26.)

19

1190439

"Proximate cause," on the other hand, is used to describe a set of limitations on the scope of the defendant's liability for results that are unlikely or attenuated. Indeed, proximate "cause" is something of a misnomer, because it is not about causation at all, in science or logic. Instead, it is founded on a question of legal policy: What kinds of unlikely or attenuated results should defendants be held responsible for? See Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So. 2d 601, 611-12 (Ala. 1980); Keeton et al., supra, § 41 at 264, § 42 at 273; Dobbs et al., supra, § 198 at 681-82, § 199; 3 Stuart M. Speiser et al., American Law of Torts § 11:1 (1986); Restatement (Third) § 29 cmt. g, Reporters' Note cmt. e.[5] This question has led courts and scholars to

---

[5]Professor Keeton cogently explains:

" 'Proximate cause' -- in itself an unfortunate term -- is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' As a practical matter, legal responsibility must be limited to those causes

1190439

which are so closely connected with the result and of such significance that the law is justified imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

"... Often ..., the legal limitation on the scope of liability is associated with policy -- with our more or less inadequately expressed ideas of what justice demands, or of what is administratively possible and convenient. ... The attempt to deal with [cases involving such legal limitations] in the language of causation leads often to confusion."

"[Proximate cause] is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred. ... This is not a question of causation, or even a question of fact, but quite far removed from both; and the attempt to deal with it in such terms has led and can lead only to utter confusion.

" ... The word 'proximate' is a legacy of Lord Chancellor Bacon .... The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness."

1190439

articulate principles that define the outer boundaries of defendants'
liability (including the concept of superseding cause). See Keeton et al.,
supra, §§ 43, 44; Dobbs et al., supra, ch. 18; Restatement (Second) §§ 435-
462; Restatement (Third) ch. 6.

Thus, proximate cause is necessarily an ever-present requirement
that applies equally to negligence and intentional torts. See Speiser et al.,
supra, § 11:23; Restatement (Second) § 431(b) & cmt. e; Restatement
(Third) § 33. Of course, the requirement may impose different limitations
on the scope of liability between negligence and intentional torts. Compare
Restatement (Third) §§ 29-32 with id. § 33. For example, as the main
opinion appears to recognize, intentional torts generally involve a higher
degree of culpability. For that reason, courts allow juries to hold
intentional-tort defendants responsible for results that are less probable

_____

Keeton et al., supra, § 41 at 264 (footnote omitted), § 42 at 273. As the
Restatement (Third) notes, " 'proximate cause' is neither about cause nor
proximity." Restatement (Third) § 26 Reporters' Note cmt. a. Because the
term is so misleading, the Restatement (Third) has aptly proposed
substituting more transparently descriptive terms such as "limits on the
scope of liability." See Restatement (Third) ch. 6, Special Note on
Proximate Cause; id. § 29 cmts. a, b, Reporters' Note cmt. b.

22

1190439

than those for which a merely negligent defendant would be held responsible. See Shades Ridge, 390 So. 2d at 607-11; Restatement (Second) § 435B cmt. a; Restatement (Third) § 33(a)-(b) & cmts. a, d, e, Reporters' Note cmt. e; cf. Speiser et al., supra, § 11:24. Again, this difference in the scope of liability is ultimately rooted not in a scientific or mathematical concept of "foreseeability," but in a moral-normative, legal-policy judgment about the breadth of results for which defendants may justly be held responsible.

This difference in the application of proximate cause explains the holding in this case. In intentional-tort cases, unusual events such as the victim's suicide are less likely to relieve a defendant of responsibility and thus to be labeled a "superseding cause" that "breaks" the "chain" of "proximate cause." Hence, suicide is always a superseding cause as to negligence (absent one of the recognized exceptions), see Gilmore, but may or may not be a superseding cause as to intentional torts.