# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL W. RONDINI, as Administrator and Personal Representative for the Estate of Megan Elizabeth Rondini, Deceased,<br><br>    Plaintiff,<br><br>v.<br><br>TERRY J. BUNN, JR.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   CASE NO.: 7:17-CV-01114-RDP<br>)<br>)<br>)<br>)<br>)<br>) |

**Plaintiff's Daubert Motion to Preclude Expert Testimony of Barbara Long**

## TABLE OF CONTENTS

A.   **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

B.   **Summary of the Argument**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.   **Admissibility of Expert Testimony**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   **Argument**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  **Dr. Long fails to apply a stated methodology to her expert opinion that she has no opinion on causation**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. **Dr. Long's expert testimony that she has no opinion on causation cannot assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence**. . . . . . . . . . . . . . . . . . . . . . . 9

IV.  **Any probative value of Dr. Long's opinions is outweighed by the dangers of unfair prejudice and misleading the jury**. . . . .. . . . . . . . . . . . . . . . . . . . . . . . 11

**CONSLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## **EVIDENTIARY SUBMISSIONS**

**Exhibit A – Barbara Long's Curriculum Vitae (Long's CV)**

**Exhibit B -  Barbara Long's Expert Report (Long's Report)**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MICHAEL W. RONDINI, as Administrator and Personal Representative for the Estate of Megan Elizabeth Rondini, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>TERRY J. BUNN, JR.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  CASE NO.: 7:17-CV-01114-RDP<br>)<br>)<br>)<br>)<br>) |

**Plaintiff's Daubert Motion to Preclude Expert Testimony of Barbara Long**

Plaintiff Michael W. Rondini moves for entry of an order excluding any expert opinion testimony from Dr. Barbara Long at the trial of the above-styled case because Dr. Long's testimony is (1) unreliable as evaluated under *Daubert v. Merrill Dow Pharm., Inc.* 509 U.S. 579 (1993), and (2) irrelevant in that it will not assist the trier of fact. Accordingly, Plaintiff asks this Court to fulfill its gatekeeping function under Rule 702 and *Daubert* and exclude the testimony of Dr. Long.

**BACKGROUND**

In 2015, Megan Rondini (hereinafter "Megan") was a twenty-year-old student at the University of Alabama. (Doc. 100, ¶ 9). Megan was entering her junior year at the University, was a pre-honors student, was majoring in biology, was employed in a biology research laboratory, and maintained a 3.812 cumulative grade point average. (*Id.*) Megan aspired to become a veterinarian. (*Id.*). On July 1, 2015, Megan went to Innisfree Irish Pub with several friends. (*Id.* at 10). Present at the same pub was thirty-four-year-old Terry J. Bunn, Jr. (hereinafter Bunn" or "Defendant").

1

(*Id*. at 11). Bunn was the son of prominent business owners in Tuscaloosa and was well-known in the community. (*Id.*).

Megan enjoyed several beers over the course of the night. (*Id.* at 12). At some point, Bunn picked up Megan, who was walking intoxicated and alone, on University Boulevard. (*Id.*). Bunn took Megan back to his home ten miles outside of Tuscaloosa in Cottondale (*Id.* at 14). Despite Megan's pleas to be taken back to her friends, Bunn ignored Megan. (*Id.* at 15). Instead, he forcibly removed Megan's clothing and engaged in non-consensual intercourse. (*Id.* at 16). Bunn fell asleep after forcing himself onto her. (*Id.* at 17). Megan, unable to leave out of his room because of a contraption with the door lock, climbed out of Bunn's second-story bedroom window to jump onto the ground below. (*Id.* at 18*)* She frantically texted her friends for help. (*Id.* at 17). Megan was taken to DCH Hospital in Tuscaloosa where she reported that she had been raped. (*Id.* at 21).

Over the next few months, Megan's mental health deteriorated. For the first time in her life, Megan was diagnosed with depression, anxiety, and PTSD. (*Id.* at 43). In October of 2015, she left the University of Alabama, the school she loved, and returned to Texas to be closer to her parents. Megan eventually transferred to Southern Methodist University in Dallas, Texas. (*Id.* at 40). But her emotional state did not improve. Sadly, early in the morning on February 26, 2016, Megan took her own life by hanging. (*Id.* at 45).

On March 3, 2021, pursuant to a Certified Question by the Honorable Judge Proctor from the Northern District of Alabama, the Alabama Supreme Court was tasked with answering the following question: "Whether a decedent's suicide, which occurs several months (in this case, nearly eight months) after a defendant's intentional tort (i.e. sexual assault and/or outrage) is a superseding cause breaking the chain of causation between the intentional tort and the decedent's

death?"[1] The Court answered the certified question as follows: "The suicide of a person who was sexually assaulted does not constitute a superseding cause, that, as a matter of law, breaks the chain of causation between the sexual assault and the victim's death so as to absolve the alleged assailant of liability."[2] The Supreme Court opined that "the federal court concluded that Rondini had produced substantial evidence to support his claim that Bunn sexually assaulted Megan and that Bunn's actions were the cause in fact of Megan's suicide."[3]

## SUMMARY OF THE ARGUMENT

The Defendant bears the burden of establishing the reliability of Dr. Long's expert testimony. Defendant has failed in meeting that burden because his expert report does not set forth Dr. Long's particular experience with regards to the subject areas of her testimony, a proven methodology Dr. Long employed to reach her conclusions, writings subject to publication or peer review in support of her findings, and testimony that assists the trier of fact to have a greater understanding of the evidence.

Defendant has provided a report that fails to meet any of the accepted methods for establishing competent expert testimony. Dr. Long's ten-page report does little more than question Megan's sexual orientation and opine that Defendant is "well-known in Tuscaloosa" and, therefore, attacks on his character are meritless (Exhibit B, Long Report). In fact, the entirety of Dr. Long's report is an attempt to victim-blame Megan and chastise her parents for bringing the present action. There is no model, no theory, no technique that Dr. Long puts forth as to whether the sexual assault caused or contributed to Megan's suicide. In fact, Dr. Long expressly disavows any authority to render any opinion on causation: "Absent an opportunity to examine Megan

---

[1] *See* Supreme Court Order, p. 2.

[2] *Id.* at p. 2.

[3] *Id.* at 16.

personally, diagnostic considerations must remain speculative" [and] "Why Megan committed suicide is a question will never be unknown [sic], but in my opinion, it is inappropriate to offer opinions on this issue of causality…." Because Defendant has failed to meet the required burden for admitting expert testimony, Dr. Long's testimony must be precluded.

## ADMISSIBILITY OF EXPERT TESTIMONY

The proponent of an expert witness's testimony "bears the burden of demonstrating the expert's qualifications and competence to give his proposed testimony." *United States v. Williams,* 865 F.3d 1328, 1338 (11th Cir. 2017) (citing *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004)). An expert witness can be qualified by "scientific training, education, or experience in the relevant field; they need not be formally educated to qualify as experts." *Id.* And even if an expert is qualified, "Federal Rule of Evidence 403 permits the exclusion of all testimony—expert or otherwise—if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." *Id.; see* Fed. R. Evid. 403; *see also Daubert,* 509 U.S. at 595 (1993).

Rule 702 of the Fed. R. Evid. "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." *United States v. Frazier,* 387 F.3d 1244, 1260. "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Kumho Tire,* 526 U.S. at 152. Consequently, in the 11th Circuit, the expert admissibility requirement has been concentrated to the following three factors:

(1) qualifications of the expert to testify competently to the matters she intends to address;
(2) the methodology the expert uses to reach her conclusions is sufficiently reliable; and

4

>  (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise to understand the evidence.

*Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850–51 (11th Cir. 2021). The expert testimony of Dr. Long should be precluded because her testimony fails to meet these requirements.

## ARGUMENT

**I.   Dr. Long's expertise in sexual harassment in the workplace does not qualify her to opine as to causation in a case of sexual assault and suicide.**

Although Dr. Long may be a highly qualified psychiatrist, Dr. Long's curriculum vitae (Exhibit A, Long "CV") does not demonstrate her experience in working with victims and/or perpetrators of sexual assault. The vocational section of Dr. Long's CV lists only two positions in which she worked that ostensibly provide some familiarity with the subject matter here:

- Psychiatric consultant to the legal community in assessing psychological harm in personal injury and other civil cases, post-traumatic stress disorder, sexual abuse, commitment, custody, disability, work-related injury, competency, and the insanity defense (Ex. A, Long CV).

- Psychiatric consultant to industry and medical/mental health community regarding diagnosis/ treatment options, workplace problems--psychiatric disability, acute psychiatric decompensation, stalking, risk assessment (suicide, homicide) (Ex. A, Long CV).

But her publications point to the focus of her expertise, which is workplace harassment and not the ramifications of sexual assault.

Dr. Long's publications belie any indication that she has the expertise to opine in this case outside the employment setting. Indeed, they indicate that while she may be well-versed in topics that relate to sexual harassment in the workplace, her expertise falls short in the subject matter at issue here—suicide following a sexual assault outside the workplace. Dr. Long's CV (Ex. A, Long CV) indicates that she has authored the following publications:

- Sexual Harassment -- A Case of Workplace Aggression;
- The MMPI-2 in Sexual Harassment/Discrimination Litigants;

5

- The Social Climate of Violence and the Hostile Workplace: Harassment and Bullying;
- Forensic Psychiatric Evaluation of Emotional Distress Claims, Parts 1 and 2;
- Keep Your Eye on the Prize! -- A Young Person's Guidebook to Adulthood;
- Hold on to Your Hat! -- Handling the Roller Coaster Emotions of the College Application Process;
- The Psychiatry of Work: Is Residency Training Adequate?;
- Psychiatry of Workplace Dysfunction -- Tools for Mental Health Professionals, Managers, and Employees;
- Articles on workplace consultation for private practitioners.

Dr. Long's expertise lies in the areas of workplace discrimination and harassment, clearly not the issue in this case. Here, the need for expert opinion is in the area of personal injury causation—is there a causal link between the sexual assault and Megan's suicide. There are no allegations of workplace violence or bullying in this case. Dr. Long's CV points to no specific background in the area of causation of suicide following a sexual assault that assists her in reaching conclusions in this matter.

Moreover, and notably, Dr. Long admits that she is not capable of rendering an expert opinion in this matter. She fails to offer "any psychiatric opinion that might be pertinent and appropriate in the case of a suicide by Megan Rondini . . ." as she was retained to do. Instead, her expert opinion is that she cannot reach an opinion:

> Understanding Megan's mental state prior to, during, and after the incident is challenging…. <u>Absent an opportunity to examine Megan personally, diagnostic considerations remain speculative</u>.
>
> Why Megan committed suicide is a question will never be unknown [sic], <u>but in my opinion, it is inappropriate to offer opinions on this issue of causality, particularly given the lack of a suicide note.</u> Bunn is not specifically mentioned in the texts leading up to her suicide, and her remark about what she might have accomplished but for one man is enigmatic. The presence of illegal drugs and alcohol, which were found in her system at autopsy, is significant.

(Emphasis added.) Dr. Long's only conclusion is that, based on her expertise, no conclusion can be reached. Therefore, the expert testimony of Dr. Long must be precluded.

6

## II. Dr. Long fails to apply a stated methodology to her expert opinion that she has no opinion on causation.

In determining reliability of an expert opinion, courts are to consider the following non-exhaustive list of relevant factors: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). In *Kumho Tire Co. v. Carmichael*, the Supreme Court clarified that testimony based solely on the experience of an expert is not admissible. 526 U.S. 137, 157 (1999). Further, "the expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one." *Id.* at 156. The primary consideration in determining the reliability of an expert's testimony is whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002)). Dr. Long simply fails to identify any methodology for her expert testimony.

Dr. Long's report contains several conclusory opinions:

- Since Megan stated that no force was used, there is a question of the validity of this [PTSD] diagnosis based on the disputed nature of incident (Ex. B, Long Rpt. at 3);[4]

- We do not have a suicide note that might explain [Megan's] intent, and it may be that her death [by hanging] was unintentional (Ex. B, Long Rpt. at 3);

- Megan accepted the therapists' and parents' view of the incident and her anger increased particularly after the litigation began (Ex. B, Long Rpt. at 9);

- Absent an opportunity to examine Megan personally, diagnostic considerations remain speculative (Ex. B, Long Rpt. at 9);

- It is inappropriate and against professional ethics to offer opinions about the "nature" or "intentions" of Bunn, a man whom Dr. Ziv did not personally examine (Ex. B, Long Rpt. at 10); and

- The involvement of media has introduced further bias and prejudice into examination of the issues in this case (Ex. B, Long Rpt. at 10).

Dr. Long fails to identify any methodology for these conclusions. She points to no analytical framework, no study, or no theory that describes:

- What amount of "force" a rape victim must suffer to have PTSD;

- How the lack of suicide note prevents a forensic psychological evaluation;

- How a suicide victim might unintentionally hang herself;

- How Megan's treatment and the litigation (which was filed after Megan's suicide) might have contributed to Megan's suicide;

- How no forensic psychological evaluation is permissible since Megan was only diagnosed with PTSD two treating psychiatrists as opposed to Dr. Liv and Dr. Long personally;

- Why Dr. Long might be able to explain Megan's and the Defendant's "nature" and "intentions" without personally examining them, but opines that it is inappropriate and against professional ethics for Dr. Ziv to do the same; and

- How media coverage prevents Dr. Long from providing an opinion in this matter.

Moreover, Dr. Long does not discuss: (1) a theory that can be and has been tested; (2) peer-reviewed publications she relies upon; (3) the potential rate of error of the particular scientific

---

[4] While she attributes the PTSD diagnosis to Dr. Liv, this diagnosis was made by Susan Arnold, M.D., who personally examined Megan in September 2015.

technique she uses; or (4) the degree to which her conclusions are generally accepted in the scientific community. From the entire substance of Dr. Long's testimony, it is painfully obvious that her opinions are based on nothing more than pure conjecture and speculation.

Further, for Dr. Long's opinions to be reliable, her testimony must be "'scientific,' meaning grounded in the methods and procedures of science." *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir. 2004). Dr. Long uses the majority of her ten-page expert opinion to do nothing other than to attack the mental health professionals that treated Megan and to attack the credibility of Plaintiff's expert, Dr. Ziv. Again, Dr. Long offers no theory, no code of ethics, and no standard from which others in her field might reach these conclusions—she simply opines that every other psychiatrist and psychologist involved in this matter is wrong.[5] She makes no effort to show that her opinions are grounded any scientific basis. In this Circuit, "[a]n expert opinion is inadmissible when the only connection between the conclusion and existing data is the expert's own assertions." *McDowell,* 392 F.3d at 1300. For this additional reason, Dr. Long's testimony must be precluded.

### III. Dr. Long's expert testimony that she has no opinion on causation cannot assist the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence.

To satisfy the third prong of expert admissibility, an expert's testimony must "assist the trier of fact, through the application of scientific, technical, or specialized expertise to understand the evidence." *Moore* 995 F.3d at 850–51. To do so, "the party offering the expert must present the witness' proposed testimony in a form that persuades the trial court that the testimony will in fact assist the trier of fact." *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005).

---

[5] There is another factor that bears serious consideration as to the admissibility of Dr. Long's testimony: whether Dr. Long is proposing to testify about matters growing directly out of research conducted independent of the litigation, or whether the opinions to be expressed were developed expressly for the purpose of testifying. *Daubert*, 43 F.3d at 1317. "[W]e may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Daubert*, 43 F.3d at 1317 (footnote omitted). It does not appear that Dr. Long's opinions have any basis in her own research or anyone else's.

9

Dr. Long's expert testimony attempt to refute Dr. Ziv's credibility as an expert and to blame Megan's suicide on her parents for choosing to pursue this action against her perpetrator. ("[L]itigation, initiated by her parents, which began as early as August 2015 introduced a significant stressor to Megan's life.") (Rpt. at 4).[6] Dr. Long offers no methodology or theory that gives scientific or medical insight into her conclusion or into the cause of Megan's suicide. Further, she offers no scientific or special knowledge that would assist the trier of fact to have a greater understanding of the evidence than they would have by examining the facts themselves. As in *Cook*, Dr. Long's testimony offers nothing more than what attorneys could argue in their closing.

Furthermore, Dr. Long's conclusion that "Why Megan committed suicide is a question will never be unknown [sic]," provides no assistance to the jury. Dr. Long provides no analysis—no model, no theory, no technique—explaining how the lack of a suicide note precludes anyone from offering an opinion on causation. To the contrary, the evidence provides ample information from which to find causation. A forensic review of medical records from psychiatrists who treated Megan following the sexual assault show a diagnosis of Megan with PTSD, Acute, Severe and Acute stress reaction with concurrent depression stemming from the sexual assault by the Defendant.[7] Megan filled out a student health questionnaire on February 24, 2016—two days before her suicide—where she specifically mentioned psychiatric symptoms related to "sexual assault and rape on July 1st, 2015." Dr. Long ignores this evidence and instead relies wholly on the alleged lack of a suicide note to determine that one can make a causation opinion. (Least of all Dr. Long herself, because her opinion is there can be no opinion on causation.)

---

[6] It is worth noting that this action was not brought until after Megan committed suicide.

[7] According to the American Academy of Psychiatry and the Law Ethics Guidelines: "For certain assessments (such as record reviews for malpractice cases), a personal examination is not required. In all other forensic evaluations, if, after appropriate effort, it is not feasible to conduct a personal examination, an opinion may nonetheless be rendered on the basis of other information." Glancy, G., Ash, P., Bath, E., Zonana, H. (2005) AAPL Practice Guideline for Forensic Assessment. *The Journal of the American Academy of Psychiatry and the Law*, 32 (2 Suppl), S3-53.

10

Dr. Long's testimony provides no assistance to the trier of fact whatsoever on the causation question. Therefore, her expert testimony should not be admitted.

**IV.   Any probative value of Dr. Long's opinions is outweighed by the dangers of unfair prejudice and misleading the jury.**

Even if an expert is qualified, and she has provided relevant and methodologically sound testimony, "Federal Rule of Evidence 403 permits the exclusion of all testimony -- expert or otherwise -- if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." *Id.; see* Fed. R. Evid. 403; *see also Daubert,* 509 U.S. at 595 (1993). Dr. Long's report creates such a danger of confusion and of misleading the jury. Her report is nothing more than speculative advocacy. As set forth above, she attacks Megan's sexual orientation without foundation, victim blames Megan for everything, and faults Megan's parents for pursuing "litigation." Her conclusion on the ultimate issue of causation is that no conclusion can be reached because Megan needs to testify and be cross examined—an impossibility.

Expert testimony is not admissible if it offers nothing more than the lawyers could argue at their closing arguments. *Cook*, 402 F.3d at 1111. Dr. Long's report is a stand-in for Defendant's lawyer's argument. It is not science. It is not a helpful expert opinion at all.

## CONCLUSION

For the reasons set forth above, the Plaintiff seeks a *Daubert* hearing on the admissibility of Dr. Long's testimony and prays that this Honorable Court preclude the testimony of Dr. Long.

*/s/ Leroy Maxwell, Jr.*
Leroy Maxwell, Jr.
Attorney for Plaintiff

*/s/ Julie E. Heath*
Julie E. Heath
Attorney for Plaintiff

*/s/ Austin T. Russell*
Austin T. Russell
Attorney for Plaintiff

**OF COUNSEL:**

**Maxwell Tillman Law Firm**
2326 and Avenue North
Birmingham, AL 35209
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
aruussell@mxawfirm.com

Julie E. Heath
**FARROW-GILLESPIE HEATH WITTER LLP**
1700 Pacific Avenue Suite 3700
Dallas, Teas 75201
Phone: (214) 361-5600
Fax: (214) 203-0651
Julie.heath@fghwlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing pleading with the Clerk Court using the CM/ECF system on this 16th day of July 2021, serving the following individuals:

Richard E. Smith
**Christian & Small LLP**
505 North 20th Street
Suite 1800
Birmingham, AL 35203-2696

**W. Ivey Gilmore, Jr.**
**GILMORE, POOLE & ROWLEY**
1905 7th Street
Tuscaloosa, AL 35401
T: (205) 752-8338
F: 205-686-1516
E: gilmore@gilmorerowley.com

                                                    */s/ Leroy Maxwell, Jr.*
                                                        Leroy Maxwell, Jr.
                                                        Attorney for Plaintiff